**Eugene PIERCE, Plaintiff–Appellant,**

**v.**

**Frederick NETZEL, Individually and as Superintendent of the Erie County Correctional Facility; Dennis T. Gorsky, as County Executive of the County of Erie, New York, and The County of Erie, New York Defendants–Appellee.**

**Docket No. 04–5606.**

United States Court of Appeals, Second Circuit.

Sept. 9, 2005.

David J. Seeger, Buffalo, NY, for Appellant.

Kristin Klein Wheaton, Assistant County Attorney, Erie County Department of Law (Frederick A. Wolf, Erie County Attorney), Buffalo, NY, for Appellee, of counsel.

Present: MESKILL, SACK, and B.D. PARKER, Circuit Judges.

**SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment be, and it hereby is, AFFIRMED.

Plaintiff Eugene L. Pierce was a deputy superintendent at the Erie County correctional facility. He initiated this suit after being effectively forced to accept early retirement. We have previously ruled on some of his claims. *See Ferrell v. Netzel,* 210 F.3d 354 (2d Cir.2000) (unpublished table decision). Pierce now appeals from the district court's grant of summary judgment for the defendants on his claims alleging 1) racially discriminatory constructive discharge in violation of 42 U.S.C. § 1981, and 2) deprivation of substantive and procedural due process in violation of 42 U.S.C. § 1983, based on defendants' defamatory statements about him.

"We review the District Court's grant of summary judgment *de novo,* examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Garcia Ramos v. 1199 Health Care Employees Pension Fund,* 413 F.3d 234, 237 (2d Cir.2005) (internal quotation marks and citation omitted). "Summary judgment is appropriate only if it can be established 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c)." *Id.*

*A. Claim of Racially Discriminatory Constructive Discharge*

██ 42 U.S.C. § 1981 provides that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

Claims of employment discrimination brought under 42 U.S.C. § 1981, like those brought under Title VII, are governed by the evidentiary burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Taitt v. Chemical Bank,* 849 F.2d 775, 777 (2d Cir.1988) (referring to claims of retaliatory discharge). "[A] plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." *Dawson v. Bumble & Bumble,* 398 F.3d 211, 216 (2d Cir.2005) (quoting *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 767 (2d Cir.2002)).

Once the plaintiff satisfies his initial, "minimal," burden, *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), "the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the'" termination, *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). If the employer carries this burden of production, the plaintiff must demonstrate by competent evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). However, a plaintiff's showing of pretext does not automatically defeat a motion for summary judgment by the defendants: "Evidence that the defendant's articulated nondiscriminatory reason is false, when added to

the prima facie case, may or may not be 'sufficient to support a reasonable inference that prohibited discrimination occurred' and warrant submitting the case to the jury." *Farias v. Instructional Sys., Inc.,* 259 F.3d 91, 98–99 (2d Cir.2001) (quoting *James v. New York Racing Ass'n,* 233 F.3d 149, 156 (2d Cir.2000)).

Pierce claims that he was constructively discharged as a result of Netzel's racially motivated investigation. Taking into account all surrounding circumstances, Pierce has alleged sufficient facts to satisfy his "minimal" burden of establishing a prima facie case as to Netzel. The fact that he was replaced by someone of the same race does not, alone, defeat his prima facie case. *Cf. Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir.2001).

Netzel has, in turn, offered a legitimate, non-discriminatory reason for initiating his investigation against Pierce: reports from Keith Hairston implicating Pierce in improper conduct by ministers at the facility. Netzel's production of a legitimate, non-discriminatory reason for his investigation satisfies his burden under the *McDonnell Douglas* framework.

Pierce argues that he submitted sufficient evidence to raise a genuine issue of fact as to whether Netzel's reasons were pretextual. Of greatest significance is Arthur Perry's deposition testimony, taken as part of another lawsuit, in which Perry indicated that Netzel "intimidated" him and promised he would be released early, in order to elicit allegations against Pierce.

However, even if Pierce were to succeed in showing pretext, he cannot sustain his ultimate burden of persuasion. Pierce's prima facie case is not strong. His failure to provide evidence to contradict the statements of Hairston or the statement of Lt. Martina, who reported security concerns to Netzel, indicates that his showing of pretext is also not very strong. Even taken in the light most favorable to Pierce, a factfinder could not reasonably infer that Netzel intentionally discriminated against him on the basis of race.

### B. Claim of Deprivation of Procedural Due Process

■ Pierce argues that defendants deprived him of due process in violation of 42 U.S.C. § 1983. When a government employee is terminated, or not renewed, in conjunction with "charge[s] . . . that might seriously damage his standing and associations in his community," the employee is entitled to due process to protect his liberty interest in his professional reputation. *Bd. of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (internal quotation marks and brackets omitted). "Due process is only implicated when there is 'stigma plus,' that is to say a loss of reputation 'coupled with some other tangible element,' such as termination." *Morris v. Lindau,* 196 F.3d 102, 114 (2d Cir.1999) (quoting *Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994)). This Court set forth the standard for a "stigma-plus" claim in *Patterson v. City of Utica,* 370 F.3d 322 (2d Cir.2004):

> In order to fulfill the requirements of a stigma-plus claim arising from the termination from government employment, a plaintiff must first show that the government made stigmatizing statements about him—statements that call into question plaintiff's good name, reputation, honor, or integrity. Statements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession may also fulfill this requirement. A plaintiff generally is required only to raise the falsity of these stigma-

tizing statements as an issue, not prove they are false. Second, a plaintiff must prove these stigmatizing statements were made public. And third, plaintiff must show the stigmatizing statements were made concurrently in time to plaintiff's dismissal from government employment.

*Id.* at 330 (internal quotation marks, citations, and footnote omitted).

Pierce fails to establish a stigma-plus claim. As noted by the district court, he offers no admissible evidence for this claim apart from one affidavit from Margaret Walton. He primarily offers his own statements that third parties told him they heard Netzel allege Pierce engaged in homosexual misconduct with inmates and smuggled drugs into the facility. These statements are inadmissible hearsay because Pierce offers them to prove the truth of the third parties' statements that they heard defamatory statements about Pierce. In addition, Walton's own affidavit contains hearsay. "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004)

█ In addition, Pierce has not put forth evidence that anyone whose actions may be said to "represent official policy," *see Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), disseminated the allegations. His claim for municipal liability against the County of Erie therefore fails.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R.

### III. State Claims

Because there remains no basis for federal jurisdiction, the district court did not err in declining to exercise supplemental jurisdiction over Pierce's state law claims.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.